# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5883 | **DATE** | 9/24/2001 |
| **CASE TITLE** | GEORGE RIACH vs. MANHATTAN DESIGN STUDIO | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendants' motion to dismiss is denied [10-1]. Defendants' motion to strike is granted as to paragraph nine of Dr. Chapman's affidavit and Dr. Elmes' affidavit in its entirety [18-1]. Defendants' motion for summary judgment is granted [10-2], and plaintiff Riach's cross-motion for summary judgment is denied [13-1].

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | **SEP 2 5 2001** | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 01 SEP 24 PM 5:52 | | |
| LG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |



| | |
|---|---|
| **GEORGE RIACH,** | ) |
| **Plaintiff,** | ) |
| | ) No. 00 C 5883 |
| v. | ) |
| | ) Judge John W. Darrah |
| **MANHATTAN DESIGN STUDIO; IRA LERNER;** | ) |
| **ASPEX EYEWEAR, INC.; and REVOLUTION** | ) |
| **EYEWEAR, INC.,** | ) |
| **Defendants.** | ) |

### MEMORANDUM OPINION AND ORDER

Plaintiff, George Riach (Riach), commenced a patent infringement action against defendants Manhattan Design Studio (Manhattan), Ira Lerner (Lerner), Aspex Eyewear, Inc. (Aspex), and Revolution Eyewear, Inc. (Revolution), alleging infringement of United States Patent 5389981 (981 Patent). Before this Court is Manhattan and Aspex's (collectively Defendants) Motion to Dismiss or in the alternative for Summary Judgment. In response, Riach filed a Cross-Motion for Summary Judgment. Defendants also seek to strike certain affidavits submitted by Riach in support of his Cross-Motion for Summary Judgment.

The parties have submitted 56.1(a)(3) Statements of Material Facts, and they rely on information outside of the complaint in support of their motions. Therefore, the 12(b)(6) motion to dismiss is converted to a motion for summary judgment. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). Accordingly, the Court denies Defendants' Motion to Dismiss and addresses the parties' motions for summary judgment.



# I. BACKGROUND

In June 1993, Riach filed a patent application with the United States Patent and Trademark Office (USPTO). Riach was subsequently granted the 981 Patent entitled "Eyeglasses Having Magnets Attached Thereto For Improving the Blood Circulation of the Eyes." (Def.'s 56.1(a)(3) Statement ¶ 1). The file history of the 981 Patent discloses an initial specification in which Riach made eight claims, including only one independent claim (Claim 1), each embodying his invention defined by him in his initial Abstract as:

> An eyeglass having a frame structure that includes a frame member having openings in which the glass lenses are mounted, wherein the frame structure of the eyeglass is employed as a support device for one or more permanent magnets that are selectively positioned on the frame or lenses so that magnetic energy is focused on the eyes for stimulating and increasing the blood circulation in the general area of the eye worn by the user thereof. (Id., at ¶ 2).

Each and every claim of Riach's initial claims was rejected by the patent examiner in an Office Action dated March 25, 1994, under 35 U.S.C. § 112, for being indefinite (Claim 5) and, under 35 U.S.C. § 102(b), as being anticipated by the cited prior art (Claims 1-8). (Id., at ¶ 3).

Riach filed an amendment in response to the Office Action, in which the initial claims were either withdrawn or amended and new claims were added. (Def.'s 56.1(a)(3) Statement ¶ 4). Riach amended his principal claim to include a description limiting the purpose of the invention and adding the requirement that the magnetic members project a magnetic field "so as to effectively improve the blood circulation within the eye or eyes subjected to the magnetic field." (Id., at ¶ 5).

As to the obviousness aspect, Riach had to overcome several prior art references, including one of his own inventions, Patent 4,988,181 (181 Patent), which "was specifically designed as a means for selectively attaching and positioning ornaments" to eyewear using magnets. Riach argued

that his new invention was patentable over his prior invention because the prior patent "does not teach that magnets are used as a means to stimulate red blood cells, as is taught in the present application." (Def.'s 56.1(a)(3) Statement ¶ 6).

Riach also added a second independent claim (Claim 8), which included the limitation that the north magnetic field impinge directly on the wearer's eye and produce an increase in the oxygen saturation of the red blood cells. (Def.'a 56.1(a)(3) Statement ¶ 7). Riach further argued that:

> The cited reference [] does not described [sic] or even suggested [sic] that his magnets are positioned so that the magnetic north field thereof is directed at the eye or eyes to effect any kind of physical change as described and claimed herein.... [The other cited reference] is a safety device for the eyes and is used primarily as a deflector to protect one's eyes from foreign metallic particles ... [by including] magnetized deflector elements ... over the eyes to attract ferromagnetic particles carried towards the eyes. There is no teaching or suggestion of impinging the north magnetic field or one's eyes. ... Even though the [prior art] are very similar to the present invention, the purposes for which the two inventions are used and the results that they obtained are entirely different and distinct. (Id., at ¶ 8).

On August 22, 1994, the Examiner issued a Notice of Allowability to Riach. In the Examiner's Statement of Reasons for Allowance, the Examiner specifically noted that:

> [Riach's prior invention] discloses an ornamental device for eyeglasses wherein the magnet[s] hold the ornament in a selective position on the glass element. {The other cited prior art] discloses a safety devise for eyes including a deflector to protect one's eyes from foreign metallic particles. {The cited art] disclose different purposes and have different results from the claimed invention in claims 1-4 and 61-12 wherein the magnet is used to improve the blood circulation in the eyes. Therefore, claims 1-4 and 6-12 are patentable distinct from [the cited prior art]. (Def.'s 56.1(a)(3) Statement ¶ 9).

In accordance with the foregoing prosecution history, the 981 Patent was issued to Riach on

3

February 14, 1995. (Def.'s 56.1(a)(3) Statement ¶ 10).

The 981 Patent has eleven claims, two of which are independent, Claims 1 and 8. Claim 1 requires that :

> Magnetic means having north and south magnetic poles mounted on said eyeglass frame structure, said magnetic means being arranged to project a north magnetic field in the direction of the eye to impinge on the eye, whereby the surrounding area thereof is stimulated by said north magnetic field. (Def.'s 56.1(a)(3) Statement ¶ 11).

Claim 8 of the 981 Patent requires that the:

> Positioning of said magnets, so that the north magnetic field of said magnet impinges on at least one said eyes of the individual so as to increase the oxygen saturation of the red blood cells. (Id., at ¶ 12).

Aspex offers for sale and sells typical eyeglass frames which are comprised of a primary frame and an auxiliary frame (typically containing sunglass lenses). The auxiliary frame and primary frame use magnets to securely engage each other. (Def.'s 56.1(a)(3) Statement ¶ 13). The two primary locations of the magnetic means of Aspex's eyeglasses are at the bridge and temple regions of the frames, with the north and south polar fields of the magnets facing vertically. (Id., at ¶ 14). The magnetic means are designed specifically and exclusively for the engagement of their counterparts and, as such, generally result in the covering up of the north magnetic fields of the magnetic members. (Id., at ¶ 16).

## II. Analysis

A. <u>Motion to Strike</u>

Defendants challenge the admissibility of Dr. Leroy Chapman's (Chapman)[1] and Dr. James Elmes' (Elmes) affidavits on grounds that the affidavits do not meet the expert witness requirements under Rule 702 of the Federal Rules of Evidence as further amplified by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) (*Daubert*), and because the affidavits set forth naked conclusions without setting forth any facts and explanation of the reasoning behind the conclusions.

A two-step analysis is used to determine whether an expert's opinion is admissible. First, the court must determine whether the expert's testimony pertains to scientific knowledge. This requires that the court consider whether the testimony has been subjected to a scientific method: it must rule out "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. Factors considered in determining whether testimony has been subjected to the scientific method include: (1) whether the theory can be and has been tested, (2) whether the theory has been subject to peer review and publication, (3) the known or potential rate of error of the technique, and (4) whether the theory has been generally accepted by the relevant scientific community. *Daubert*, 509 U.S. at 590 - 91. The conclusion must be based solely on the principles and methodology underlying the expert's conclusion, not the conclusion itself. *Daubert*, 509 U.S. at 595.

Second, the court must determine whether the evidence assists the trier of fact in understanding the evidence or determining a fact in issue. In other words, the suggested scientific testimony must "fit" the issue to which the expert is testifying. *Daubert*, 509 U.S. at 590.

---

[1] Defendants' motion seeks to strike Dr. Chapman's affidavit. However, Defendants' argument only pertains to paragraph nine of the affidavit. Therefore, the Court only addresses the admissibility of paragraph nine as to Dr. Chapman's affidavit.

5

In the instant case, Chapman opines, in paragraph nine of his affidavit, that the north magnetic field that is projected from defendants' eyewear stimulates matter which is in the path of a field which is susceptible to the effects of a magnetic field. Chapman's other opinions and conclusions in the paragraphs preceding paragraph nine are supported by the facts, testing, and explanation of testing found within those paragraphs. However, paragraph nine makes a conclusion as to the stimulation of matter because of the placement of the magnets but offers no basis for how this conclusion was reached. Paragraphs one through eight do not support the opinion reached in paragraph nine, and there is nothing to indicate that Chapman conducted any studies or analyses to substantiate his opinion in paragraph nine. Chapman does not allude to any authorities that support his opinion, and he does not attempt to demonstrate that his views have gained general acceptance in the scientific community. Accordingly, paragraph nine of Chapman's affidavit fails the first of the *Daubert* test because it is not based on any discernable scientific methodology and is stricken.

In Elmes' affidavit, Elmes states that he is a physician that is familiar with the effects of magnetism in the human body and, specifically, the effects of magnetism on blood circulation. He avers that he analyzed and tested two examples of defendants' eyewear for strength and orientation of the magnetic fields generated by such eyewear. Elmes does not indicate what testing was completed or what data, if any, was analyzed. Elmes then avers various opinions to a reasonable degree of medical certainty that the defendants' eyewear stimulates the area surrounding the eye or eyes, improves the blood circulation within the wearer's eyes, and increases the oxygenated blood being brought to the affected tissue.

Elmes' affidavit also fails the first part of the *Daubert* test for admissibility because the affidavit fails to indicate any discernable scientific methodology. Instead, the affidavit makes

6

conclusory medical and scientific opinions without any indication of what testing and analyses were completed. Accordingly, Elmes' affidavit is stricken.

Assuming argumendo, that Chapman's and Elmes' affidavits did meet the *Daubert* standards, they would still not be admissible because they fail to comply with the requirements of Rule 56(e) of the Federal Rules of Civil Procedure.

Rule 56(e) requires experts to set forth facts and explain the reasoning that was used in reaching their conclusions. Fed. R. Civ. P. 56(e); *Mid-State Fertilizer Co. v. Exchange National Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir. 1989) (*Mid-State*). "Rule 56(e) ... provides that affidavits supporting and opposing motions for summary judgment must do more than present something that will be admissible in evidence. They shall 'set forth facts' and by implication in the case of experts (who are not 'fact witnesses') a process of reasoning beginning from a firm foundation." *Mid-State*, 877 F.2d at 1339. "An expert who supplies nothing but a bottom line supplies nothing of value in the judicial process, and his 'naked opinion' does not preclude summary judgment." *Weigel v. Target Stores*, 122 F.3d 461, 469 (7th Cir. 1997), quoting *American Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1464 (7th Cir. 1996) (Posner, C.J., dissenting).

Here, paragraph nine of Chapman's affidavit and Elmes' affidavit aver expert opinions; but they fail to supply any facts setting forth any foundation, basis, or reasoning used in making their opinions. Accordingly, paragraph nine of Chapman's affidavit and Elmes' affidavit are inadmissible under Rule 56(e) and are stricken on this alternate ground.

B. Motions for Summary Judgment

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). However, the nonmovant must still come forward with evidence establishing the elements of its claim on which it bears the burden of proof at trial. As such, it must establish specific facts that show there is a genuine issue for trial. *Miller*, 203 F.3d at 1003.

In the context of patent infringement claims, summary judgment for infringement is appropriate when it is apparent that only one conclusion as to infringement could be reached by a reasonable jury. Summary judgment as to noninfringement is appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement; as such, failure renders all other facts immaterial. *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed. Cir. 2001) (*Telemac*).

A patent infringement analysis involves a two-step process. First, the claims are construed by the court to determine the scope of the claims. Second, the court applies the properly construed claim against the accused device. *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 249 F.3d 1314, 1323 (Fed. Cir. 2001) (*Lockheed*).

1. Claim Construction

In reviewing the claims of a patent, the court reviews the intrinsic evidence, which includes the claim language, the written description, and prosecution history. The written description and prosecution history "should always be consulted to construe the language of the claim". *Ecolab, Inc. v. Envirochem, Inc.*, 2001 WL 1013351 (Fed. Cir. Sept. 6, 2001) ___ F.3d ___, ___ (Fed. Cir. 2001) (*Ecolab*). The intrinsic evidence is consulted to determine if the patent owner has chosen to be his

8

own lexicographer. *Ecolab*, __ F.3d at __.

Furthermore, explicit arguments made by the patent owner during the prosecution to overcome prior art can lead to narrow claim interpretations because, by distinguishing a claimed invention over prior art, the applicant has indicated what the claims do not cover. *Lampi Corp. v. American Power Prod., Inc.*, 228 F.3d 1365, 1374 (Fed. Cir. 2000) (*Lampi*).

The 981 Patent contains eleven claims. Of the eleven claims, Claims 1 and 8 are independent claims – all other claims depend on Claims 1 and 8. Therefore, if either of Claims 1 or 8 are not infringed, then all other claims in the patent cannot be infringed as a matter of law. *See Jeneric/Pentron, Inc. v. Dillion Co.*, 205 F.3d 177, 1383 (Fed. Cir. 2000).

Claim 1 of 981 Patent includes, in pertinent part, "[a]n eyeglass frame ... so as to project a magnetic field into the surrounding area of one's eye or eyes so as to effectively improve the blood circulation within the eye or eyes ... project a north magnetic field on the eye, whereby the surrounding area thereof is stimulated by said north magnetic field..."

The plain language of Claim 1 indicates that it requires magnets projecting a north magnetic field into the surrounding area of the eye so as to (1) improve blood circulation in the eye and (2) stimulate the surrounding area of the eye. Riach argues that the language regarding stimulation of oxygen is functional language only; therefore, it does not serve as a limitation on the claim for purposes of infringement.

A "whereby" clause that merely states the result of the limitations in the claim do not add to patentability or substance of the claim. *Texas Instruments Inc. v. United States Inter'l Trade Comm'n*, 988 F.2d 1165, 1172 (Fed. Cir. 1993). However, when the terms in a whereby clause are emphasized as being effective for distinguishing over the prior art in securing the allowance of the

9

claim during the prosecution of the patent, such terms are deemed an essential feature necessary to the establishment of infringement. *Eltech Sys. Corp. v. PPG Indus.*, 710 F.Supp. 622, 633 (W.D. La 1988) affirmed 903 F.2d 805 (Fed. Cir. 1990).

The prosecution history of the 981 Patent reveals that Riach intended and vigorously argued that health benefits recited in the 981 Patent were key distinguishing features of his invention over the prior art. For example, Riach argued that: "In this invention [claimed in the prior Riach patent] Mr. Riach does not teach that magnets are used as a means to stimulate red blood cells of the eye as a means to cause the cells of the eye ... to cause the cells to eliminate metabolic waste, as taught in the present application [981 Patent] ... to establish a positive effect on one's vision cannot be found in the [prior] art." In addition, Riach amended the original version of Claim 1 of the 981 Patent by adding the language that "so as to effectively improve blood circulation within the eye or eyes subjected to the magnetic fields." Based on this prosecution history, the language contained in the whereby clause must be construed as effective and a limitation on the scope of the claim.

Claim 8 of the 981 Patent includes, in pertinent part, "subjecting the eyes to an increase in the oxygen content of the surrounding area of said eyes ... so that the north magnetic fields of said magnet impinges on at least one of said eyes ... so as to increase the oxygen saturation of the red blood cells."

The plain language of Claim 8 indicates that it requires magnets projecting a north magnetic field into the surrounding area of the eye so as to increase the oxygen saturation of red blood cells.

The prosecution history further reinforces the above findings. In an effort to overcome the rejection of the originally filed patent because the claims were found not to be new, Riach made the arguments cited above. In reliance on the above assertions, the patent examiner found that the prior

10

art and the new art "disclose different purposes and have different results from the claimed invention in [the allowed claims] wherein the magnet is used to improve the blood circulation in the eyes". The explicit arguments made by Riach during the prosecution of the 981 Patent to overcome prior art lead to the claim interpretation cited above. *See Lampi*, 228 F.3d at 1374.

2. Infringement

Infringement may be found by a finding of literal infringement or through the doctrine of equivalents. *See Telemac*, 247 F.3d at 1330. Each limitation of the claim must be present in the accused device for a finding of literal infringement. Any deviation from the claim precludes a finding of literal infringement. *Telemac*, 247 F.3d at 1330.

Here, Riach has failed to establish that each of the claim limitations are present in Defendants' eyewear. Riach has not shown that Defendants' eyewear includes the limiting health benefits included in the 981 Patent. Summary judgment based on literal infringement must be denied.

An accused device may infringe under the doctrine of equivalents if each element performs substantially the same function, in substantially the same way, to achieve substantially the same result. *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 40 (1997). When infringement is alleged under the doctrine of equivalents, the legal limitations of prosecution history estoppel and the "all elements" rule must first be determined by the court. *Lockheed*, 249 F.3d at 1326; *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558, 586 (Fed. Cir. 2000).

Prosecution history estoppel may arise by amendments made to overcome prior art rejections or by arguments made to secure the allowance of a claim. The first step in this analysis is to determine which claim elements are alleged to be met by equivalents. *Lockheed*, 249 F.3d at 1326.

11

Here, Riach alleges the health benefits of the 981 Patent are met because Defendants' eyewear substantially causes the same health benefits as found in the 981 Patent.

Next, the court must determine whether an amendment was made concerning the limitations at issue during the prosecution of the patent. *Lockheed*, 249 F.3d at 1326. If the claim limitations at issue were amended and the amendment narrowed the literal scope of the claim, prosecution history estoppel bars the application of the doctrine of equivalents to the claim limitation, unless the patent holder establishes that the amendment was for a purpose unrelated to patentability. *Ecolab*, ___ F.3d at ___; *Lockheed*, 249 F.3d at 1326; *Festo*, 234 F.3d at 586.

It is undisputed that limitations establishing the health benefits of the 981 Patent, including the addition of language in Claim 1 "so as to improve blood circulation within the eye or eyes...." and the addition of the second independent claim, Claim 8, which includes increasing the oxygen content of the surrounding area of the eyes, were added to the claim by amendment for a reason related to patentability and that these limitations narrowed the scope of the claim. Therefore, prosecution history estoppel bars a finding of infringement under the doctrine of equivalents. *Ecolab*, ___ F.3d at ___; *Lockheed*, 249 F.3d at 1326; *Festo*, 234 F.3d at 586.

Assuming argumendo, that the prosecution history estoppel did not bar Riach's claim under the doctrine of equivalents, Riach has failed to establish that Defendants' eyewear performs substantially the same function, in the same way, to achieve substantially the same effect as the 981 Patent. For example, Defendants' eyewear does not have the therapeutic effect as Riach's eyewear. In addition, the magnets on Defendants' eyewear are at the bridge and temple regions of the frames with the north and south polar fields facing vertically, and the north magnetic field is covered with the magnet used to affix sunglasses to the frames. Accordingly, Riach's Cross-Motion for Summary

Judgment is denied.

The above facts and findings by the Court establish that Riach's proof fails to establish infringement, both literally and under the doctrine of equivalents. Such failure renders summary judgement in favor of Defendants appropriate. *See Telemac*, 247 F.3d at 1323.

For the foregoing reasons, Defendants' Motion to Dismiss is denied. Defendants' Motion to Strike is granted as to paragraph nine of Dr. Chapman's affidavit and Dr. Elmes' affidavit in its entirety. Defendants' Motion for Summary Judgment is granted, and Riach's Cross-Motion for Summary Judgment is denied.

Dated: November 26, 2001

JOHN W. DARRAH
United States District Judge